UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:05CV-211-H

SHARON E. SHAJEE                                                                                        PLAINTIFF

V.

FEDEX EXPRESS, FEDERAL EXPRESS
CORPORATION, a Delaware Corporation                                                   DEFENDANTS

**MEMORANDUM OPINION**

     Plaintiff, Sharon Shajee, alleges race discrimination and retaliation under the Kentucky Civil Rights Act ("KCRA") KRS § 344.040 *et seq.*, wrongful discharge and intentional infliction of emotional distress, arising from her employment with Federal Express Corporation ("FedEx") in Louisville between August 27, 1998 and July 14, 2004, and her termination on July 14. Plaintiff, an African-American female, contends she was discriminated against and ultimately terminated because of race. She further claims FedEx retaliated against her because her husband was shot and killed during an alleged robbery attempt in October 2002.

     FedEx has now moved for summary judgment on all claims. After reviewing all of the evidence cited by both sides, the Court agrees with the FedEx's basic analysis. The Court must conclude that none of the evidence is sufficient to convince a reasonable jury that discrimination played any role in Plaintiff's termination.

I.

     Plaintiff had worked at FedEx for over fifteen (15) years when the pertinent events

leading to Plaintiff's termination began. On July 8, 2004, a customer complained about a missing package that Plaintiff was responsible for delivering. The customer, Kenneth Von Roenn, Jr., notified FedEx that he did not receive the subject package and that his review of a surveillance videotape showed Plaintiff leaving the premises with a package in her possession. Plaintiff does not dispute the extent of FedEx's investigation.

FedEx did conduct a comprehensive investigation. FedEx began by interviewing Von Roenn and reviewing the videotape. The videotape showed Plaintiff leaving the premises with a package thought to be Von Roenn's. FedEx interviewed the receptionist who interacted with Plaintiff and obtained a written statement from her. In her written statement, the receptionist noted that Plaintiff was out of uniform and appeared to be in a hurry. She confirmed that Plaintiff only delivered two packages to her and left with one package under her arm. In addition, FedEx reviewed the Delivery/Pickup Route Trace record for Route 653 on June 21, 2004 which indicated Plaintiff scanned the package as delivered to 815 West Market Street. FedEx also reviewed the COSMOS Production System Record which showed Plaintiff POD'd or scanned the package addressed to Von Roenn as delivered at 8:25 a.m. on June 21, 2004. Finally, FedEx reviewed the COSMOS Production System Record and the Signature Record each of which revealed that a person named "J. Deloy" allegedly signed for all three packages. Von Roenn told FedEx no person by the name of "J. Deloy" worked in the building.

Before completing the initial investigation, FedEx interviewed Plaintiff concerning these events. Plaintiff admitted to not wearing her uniform on three or four occasions when she delivered packages for FedEx, including during her route on June 21, 2004. She did not know where the package was located. She stated she may not have scanned the correct code on the

2

package because she was in a hurry that morning.  Plaintiff also admitted to falsifying her timecard of June 21, 2004 as she acknowledged leaving work on that date prior to the checkout time of 17:40 as indicated on the timecard.  FedEx also discovered Plaintiff did not place a Dex 03 scan (scan for bad/wrong address) on the package nor did she scan a Stat 44 (location scan).  Plaintiff was required to enter a Dex 03 scan in her scanner to indicate a package with a bad/wrong address.  She failed to do so.

FedEx also reviewed the security videotape of the LOUA station for June 21, 2004 which revealed Plaintiff leaving the premises in her personal vehicle prior to the checkout time of 17:40 as indicated on her timecard.  On the tape, Plaintiff's personal vehicle, a dark colored SUV, was seen leaving the station parking lot approximately fifteen (15) minutes before her clock out time.

Upon completion of the investigation, Plaintiff's Operations Manager, Rhett Bridges, conferred with his Senior Manager, Steve James, and decided to terminate Plaintiff's employment in light of her violations of company policy.  Section 2-5, Acceptable Conduct, of the FedEx *People Manual*, was in effect in June-July, 2004.  This policy provides an employee may be terminated for falsifying company documents, including, but not limited to, delivery records and timecards.  During the course of her employment, Plaintiff had access to the *People Manual* and understood she could be terminated for falsifying company records.

II.

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  For claims that lack direct evidence of intent to discriminate, the well-established *McDonnell*

3

*Douglas/Burdine* burden-shifting framework applies to claims of discrimination brought under Title VII. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). In order to prove a violation of the KCRA, a plaintiff must prove the same elements as required for a *prima facie* case of discrimination under Title VII. *See Talley v. Bravo Pitino Restaurant*, 61 F.3d 1241, 1250 (6th Cir. 1995) (relying on *Harker v. Federal Land Bank of Louisville, Ky.*, 679 S.W.2d 226, 299 (Ky. 1984)).

To establish a *prima facie* case of racial discrimination under *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), the plaintiff must demonstrate that (1) she is a member of a protected class, (2) she was subjected to an adverse employment action, (3) she was qualified, and (4) she was replaced by a person not in a protected class. *See Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 928 (6th Cir. 1999). If Plaintiff sustains her burden of establishing a *prima facie* case, the burden then shifts to Defendant to articulate a legitimate, nondiscriminatory reason for the alleged adverse employment action. If Defendant successfully carries its burden, the burden shifts to Plaintiff to produce evidence from which a jury could find that Defendant's stated reason is merely pretextual. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Plaintiff may demonstrate pretext by showing Defendant's articulated reasons "(1) had no basis in fact, (2) . . . did not actually motivate [the adverse action taken against her], or (3) . . . were insufficient to motivate [the adverse action taken against her]. *E.g.*, *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) (italics omitted)." *McClain v. Northwest Cmty. Corr. Ctr. Judicial Corr. Bd.*, 440 F.3d 320, 332 (6th Cir. 2006). For purposes of this analysis, the Court will assume that Plaintiff can establish a *prima facie* case.

Plaintiff apparently does not dispute the extent of the investigation that FedEx undertook. She only disputes its motives and conclusions. Plaintiff says that she could not locate the customer for proper delivery of the package and that her subsequent actions were based upon her understanding of proper procedures. For reasons that remain unexplained, the package in question was lost and Plaintiff concedes that it cannot be located. FedEx responds that Plaintiff's failure to deliver a package, her attempted falsification of delivery records and her falsification of time records constitutes sufficient and legitimate grounds for termination.

Plaintiff argues that FedEx's motives were improper and illegal. However, she has only her own belief and no evidence to support these allegations. This Court can find no legal or factual basis to suggest a pretext. No evidence suggests that the charges were either false or even suspicious. FedEx had sound reasons for believing the results of its investigation. The Court can find no reason why FedEx should not be entitled to rely upon its investigation. The FedEx employee manuals make it clear that termination is an appropriate sanction for these types of violations. Normal employee practices suggest the same. No evidence suggests that FedEx has treated other similarly situated employees differently. To suggest pretext, Plaintiff must do a lot more than simply disagree with FedEx's conclusions. In sum, the evidence overwhelming demonstrates that the conduct that FedEx uncovered constituted legitimate nondiscriminatory reasons for terminating Plaintiff.

III.

The KCRA pre-empts Plaintiff's cause of action for "wrongful termination" and for intentional infliction of emotional distress. In *Wiseman v. Whayne Supply Co.*, 359 F.Supp.2d 579, 592 (W.D. Ky. 2004), this Court held the KCRA preempts a common law cause of action

for wrongful discharge as recognized by the Kentucky Supreme Court in *Gryzb v. Evans*, 700 S.W.2d 399 (Ky. 1985). In *Grzyb,* the plaintiff brought a wrongful discharge claim alleging his termination was discriminatory; however he did not specifically assert a violation of the KCRA. *Id.* at 400. The Kentucky Supreme Court first recognized the KCRA specifically provides redress for the type of conduct alleged in the complaint. *Id.* at 401. The court then noted the KCRA's prescribed procedural means of redressing complaints of discrimination through the Kentucky Commission on Human Rights, is an exclusive procedure. *Id.* The court stated "[w]here the statute both declares the unlawful act and specifies the civil remedy available to the aggrieved party, the aggrieved party is limited to the remedy provided by the statute." *Id.* (referring to *Trembath v. St. Regis Paper Co.*, 753 F.2d 603 (7th Cir. 1985)). Accordingly, the court held the KCRA preempts the field of its application, meaning that a cause of action for wrongful discharge which arises from conduct specifically prohibited by the KCRA, is not viable. *Id.*

It is also well established that when a plaintiff prosecutes a statutory discrimination claim under the KCRA and a common law claim of intentional infliction of emotional distress, the former preempts the latter. *The Kroger Co. v. Buckley*, 113 S.W.3d 644, 646-47 (Ky. App. 2003); *Wilson v. Lowe's Home Center*, 75 S.W.3d 229, 229 (Ky. App. 2001); *Messick v. Toyota Motor Manufacturing, Kentucky, Inc.*, 45 F.Supp.2d 578, 582 (E.D. Ky. 1999).

These principles require the dismissal of Plaintiff's claims for wrongful termination and intentional infliction of emotional distress which arise from the same events as the KCRA claim.

IV.

Count IV of Plaintiff's complaint fails to state a claim for retaliation under the KCRA.

Although in Count IV, Plaintiff generally alleges she engaged in an activity protected by the KCRA, she does not identify such activity.

To make a *prima facie* case of retaliation under the KCRA, a plaintiff must establish the essential elements of a retaliation claim under Title VII. *Ford v. General Motors Corp.*, 3305 F.3d 545, 552-53, n. 3 (6th Cir. 2002) (citing *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 793 (6th Cir. 2000)). The following elements must be demonstrated: "(1) the plaintiff engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action." *Morris*, 201 F.3d at 792.

Plaintiff believes she was somehow retaliated against because her husband was shot and killed during a robbery attempt in October 2002. Even if this allegation were true, Plaintiff's husband's alleged illegal conduct cannot serve as a basis for a retaliation claim under the KCRA. Plaintiff asserts that a "casual [sic] connection [exists] between [Plaintiff's] Complaint of wrongful termination and retaliation against her by the Defendant." This Memorandum Opinion has already shown that no evidence supports such an allegation.

The Court will enter an order consistent with this Memorandum Opinion.

cc: Counsel of Record